# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| ROBIN SIMMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-CV-1670 NAB |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

The following opinion is intended to be the opinion of the Court judicially reviewing the

denial of Robin Simmons' application for disability insurance benefits and supplemental security

income under the Social Security Act. The Court has jurisdiction over the subject matter of this

action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the

United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 14.] The Court has

reviewed the parties' briefs and the entire administrative record, including the hearing transcript

and the medical evidence. The Court heard oral argument in this matter on December 2, 2015.

Based on the following, the Court will affirm the Commissioner's decision.

## I.    Issues for Review

Simmons presents three issues for review. First, Simmons asserts that the administrative

law judge (ALJ) failed to afford and appropriate controlling weight to the opinion of Simmons'

treating physician Dr. Steven Simon. Second, Simmons contends that the ALJ erred in

discounting her credibility regarding her pain symptoms. Third, Simmons states that the ALJ

erred in finding that her condition does not meet or equal Listings 1.02 or 1.04. The

Commissioner contends that the ALJ's opinion is supported by substantial evidence in the record as a whole and should be affirmed.

## II.       Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).

The SSA uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled.  20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1).  First, the claimant must not be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act.   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations.    20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity (RFC) to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(iv).  If the claimant meets this burden, the analysis proceeds to step five.  At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs in the national economy.  *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000).  If the claimant satisfies all

of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physician;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

## III. Discussion

### A. Listings 1.02 and 1.04

Simmons contends that the ALJ should have found that she met Listings 1.02 and 1.04. The listing of impairments in Appendix 1 describes for each of the major body systems impairments considered to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525(a). Merely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing." *McCoy v. Astrue*, 648 F.3d 605, 611-12 (8th Cir. 2011); 20 C.F.R. § 404.1525(d) (An impairment cannot meet a listing based solely on a diagnosis). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990) (superseded by statute on other grounds). "The claimant has the burden of proving that his impairment meets or equals a listing." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010).

The ALJ found that Simmons had the severe impairments of disorder of the bilateral knees, disorder of the cervical spine, disorder of the lumbar spine, migraines, obesity, and depressive disorder. (Tr. 12.)

### 1. Listing 1.02

Listing 1.02 requires the following:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.

In this case, Simmons asserts that she meets Listing 1.02 for major dysfunction of a joint due to any cause, because weight bearing x-rays demonstrate significant arthritic changes and osteophyte formation with degenerative changes. Simmons contends that the degenerative joint disease in both of her knees combined with her chronic joint pain and stiffness that limits her ability to ambulate effectively, combined with her obesity and other impairments indicates that she meets the requirements for Listing 1.02. The ALJ found that Simmons did not meet Listing 1.02, because she has not established that she is unable to ambulate effectively, nor that she is unable to perform fine and gross movements effectively. (Tr. 14.)

Based on the Court's review of the evidence, the ALJ's decision that Simmons does not meet Listing 1.02 is supported by substantial evidence in the record. First, Simmons cannot establish that she is unable to ambulate effectively. The regulations provide:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b. "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school." *Id.* A review of the record as a whole indicates that although Simmons has used a cane at times, throughout the alleged period of disability she has been able to ambulate effectively without assistance. (Tr. 392, 445-46, 469, 532, 766, 776). There is no evidence that she is unable to independently initiate, sustain, or complete any activities.

Alternatively, Simmons is unable to show an inability to perform gross motor functions. Section 1.00B2c provides:

> Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the

> inability to prepare a simple meal and feed oneself, the
> inability to take care of personal hygiene, the inability to sort
> and handle papers or files, and the inability to place files in a
> file cabinet at or above waist level.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2c. Nerve conduction studies and EMG testing

performed in January and April 2013 indicated no evidence of any neuropathy or radiculopathy.

(Tr. 492-93, 544-46.) Simmons' medical records indicate numerous doctors' visits where

Simmons had normal range of motion, muscle strength testing was 5/5, and reflexes were within

normal limits for her upper extremities. (Tr. 376, 473, 476, 498, 531, 605, 776.) The evidence

in the record as a whole does not support a finding that Simmons' conditions, singly or in

combination, meet or equal Listing 1.02.

### 2.    Listing 1.04

Next, Simmons contends that she meets Listing 1.04. The listing requires the following:

> A disorder of the spine, (e.g., herniated nucleus pulposus,
> spinal arachnoiditis, spinal stenosis, osteoarthritis,
> degenerative disc disease, facet arthritis, vertebral fracture),
> resulting in compromise of a nerve root (including the cauda
> equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by
> neuro-anatomic distribution of pain, limitation of motion of
> the spine, motor loss (atrophy with associated muscle
> weakness or muscle weakness) accompanied by sensory
> reflex loss and, if there is involvement of the lower back,
> positive straight leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or
> pathology report of tissue biopsy, or by appropriate
> medically acceptable imaging, manifested by severe burning
> or painful dysesthesia, resulting in the need for changes in
> position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication,
> established by findings on appropriate medically acceptable
> imaging, manifested by chronic nonradicular pain and

weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

Simmons contends that her conditions meet or equal Listing 1.04, because her degenerative disc disease causes chronic, recurrent low back pain with pain radiating into her lower extremities, which is exacerbated by her obesity. She states that because of this, she cannot do any activities requiring prolonged standing or sitting as it complicates her degenerative disc disease. Simmons states that the degenerative disc disease in her cervical and lumbar spine, combined with her other conditions, symptoms, and obesity meet or equal Listing 1.04. The ALJ found that Simmons did not meet Listing 1.04, because the record does not demonstrate compromise of a nerve root or the spinal cord with the additional findings required by subsections A, B, or C. (Tr. 14.) The ALJ noted that there were contradictory MRI findings regarding whether root compression or nerve impingement exists and relies on the most recent MRI findings. (Tr. 18.)

Based on the record in the evidence as a whole, the Court finds that the ALJ's determination that Simmons' conditions did not meet or equal Listing 1.04 is supported by substantial evidence. Although there was some discrepancy among the MRI test interpretations, the most recent MRI does not indicate nerve impingement. Further, Simmons has had negative straight leg tests and normal range of motion. (Tr. 376, 442, 476, 531.) There is no evidence in the record that Simmons would meet the requirements of Listing 1.04(B) or (C).

**B.    Credibility**

Simmons also contends that the ALJ erred in evaluating her credibility and the ALJ's assessment is not supported by substantial evidence. In considering subjective complaints, the ALJ must fully consider all of the evidence presented, including the claimant's prior work

record, and observations by third parties and treating examining physicians relating to such matters as:

> (1) The claimant's daily activities;
>
> (2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) Any precipitating or aggravating factors;
>
> (4) The dosage, effectiveness, and side effects of any medication; and
>
> (5) The claimant's functional restrictions.

*Polaski v. Heckler*, 725 F.2d 1320, 1322 (8th Cir. 1984). It is not enough that the record contains inconsistencies; the ALJ is required to specifically express that he or she considered all of the evidence. *Id.* Although an ALJ may not discredit a claimant's subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006). The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. *Id.* Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988).

In this case, the ALJ discounted Simmons' credibility, because of contradictory testimony at the administrative hearing, inconsistences between her allegations and activities of daily living, receipt of unemployment benefits, lack of motivation, and allegations of drug-seeking behavior. (Tr. 16-17.) All of the factors considered by the ALJ can be considered when

assessing credibility in a social security disability case. *See Juszczyk v.* Astrue, 542 F.3d 626, 632 (8th Cir. 2008) (If an ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so, deference is given to the ALJ's credibility determination); *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (ALJ can disbelieve subjective complaints if there are inconsistencies in the evidence as a whole and lack of corroborating evidence is just one of the factors the ALJ considers); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Circuit 2005) (significant daily activities may be inconsistent with claims of disabling pain); *Anderson v. Shalala*, 51 F.3d 777,780 (8th Cir. 1995) (the law is clear that the ALJ can consider drug seeking behavior in a credibility determination); *Jernigan v. Sullivan*, 948 F.3d 1070, 1074 (8th Cir. 1991) (a claimant may admit an ability to work by applying for unemployment compensation because such an applicant must hold himself out as available, willing, and able to work). The ALJ provided good reasons for the credibility determination and his determination was supported by the record. The ALJ acknowledged that Simmons experiences pain caused by her conditions. "While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability." *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996).

A review of the entire record demonstrates that ALJ did not rely solely upon any one of the factors in the credibility analysis. Considering the combination of the factors relied upon by the ALJ, substantial evidence in the record supports the ALJ's credibility findings. Based on the foregoing, the Court finds that the ALJ's credibility determination was supported by substantial evidence in the record as a whole.

## C.     Medical Opinion Evidence

Finally, Simmons contends that ALJ erred by failing to give controlling weight to the opinion of her treating physician Dr. Steven Simon.  All medical opinions, whether by treating or consultative examiners are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c), 416.927(c).  Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it.  *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).  A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole."  *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007).  A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.  20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 96-2p; *see also Hacker*, 459 F.3d at 937.  "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation."  *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000).

In making a disability determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant evidence in the record."  20 C.F.R. §§ 404.1527(b), 416.927(b); *see also Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009).

"[T]he ALJ is not qualified to give a medical opinion but may rely on medical evidence in the record." *Wilcockson v. Astrue*, 540 F.3d 878, 881 (8th Cir. 2008).

Dr. Simon treated Simmons for pain management between March 2013 and January 2014. (Tr. 535-36, 736-737, 757-59, 766-68, 785.) Dr. Simon diagnosed Simmons with cervical and lumbar disease with chronic myofascial dysfunction and degenerative knee disease with an abnormal gait. (Tr. 535, 768, 758-785.) Dr. Simon prescribed a brace for Simmons' right knee and referred her to two surgeons for evaluation of her knees. (Tr. 785.) On September 3, 2013, Dr. Simon completed a treating physician questionnaire regarding Simmons' medical impairments. (Tr. 736-37.) Dr. Simon wrote that he was treating Simmons for neck, arm, back, and knee pain, chronic headache, gait problems, and herniated and prolapsed discs. (Tr. 736.) Dr. Simon wrote that he restricted her activities by requiring her to use a cane, wear a knee brace, take pain medication, limit lifting and carrying, and limit her time standing. (Tr. 737.) He opined that Simmons was unable to work full-time, because "working will exacerbate her condition," sitting increases symptoms, her lumbar spine may require surgery, and she needs a knee replacement. (Tr. 737.)

The ALJ gave little persuasive weight to Dr. Simon's opinion, because although he stated she needed surgery, the surgeon he referred Simmons to stated that she was not a candidate for surgery. (Tr. 19.) The ALJ also stated that Dr. Simon did not indicate what testing he performed or provide support for his opinion that Simmons could not sit for long periods of time. (Tr. 19.) The ALJ found that Dr. Simon's ultimate conclusion that Simmons could not work full-time was a decision that was reserved to the Commissioner. (Tr. 19.)

After a careful review of the entire record, the Court concludes that the ALJ did not err in granting little weight to Dr. Simon's opinion. First, Dr. Simon's opinion is very conclusory.

Although he describes Simmons' impairments and her current treatment, he provides no specific support for the functional limitations that he gives in the opinion or the opinion that she would be unable to work "life long." Dr. Simon's opinion regarding her need for surgery also contradicts the opinion of surgeon that she was not a candidate for surgery after considering her spinal disease problems[1]. (Tr. 784.) Further, an opinion that a claimant is disabled is a determination reserved to the Commissioner and a statement by a medical source that a claimant is disabled or unable to work does not require an automatic determination of disability by the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). The ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). The RFC determination is based on all of the evidence in the medical record, not any particular doctor's treatment notes or medical opinion. *Pearsall*, 274 F.3d at 1217. Therefore, the ALJ did not err in giving little weight to Dr. Simon's opinion.

## IV.    Conclusion

The Court finds that substantial evidence supports the ALJ's decision as a whole. As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only 'enough that a reasonable person would find it adequate to support the decision,' and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-993 (8th Cir. 2014) (internal citations omitted). A review of the record as a whole demonstrates that Simmons has some restrictions in her functioning and ability to perform work related activities, however, she did not carry her

---

[1]The Court notes that Plaintiff's counsel refers to a doctor's note from Dr. John Romito on December 6, 2013 stating that Simmons "needs to consider a total knee arthroplasty" to support her contention that she needed knee surgery (Tr. 753.) Dr. Romito then ordered Simmons to return for a follow-up after she consulted with her spine doctors. (Tr. 753.) At the next follow-up appointment in January 2014, Dr. Romito noted that she was not a candidate for knee replacements with [the] spinal disease that she has" and he dismissed her from care. (Tr. 784.)

burden to prove a more restrictive RFC determination. *See Pearsall*, 274 F.3d at 1217 (it is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC). Therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 21.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

Dated this 2nd day of December, 2015.

       /s/ Nannette A. Baker
      NANNETTE A. BAKER
      UNITED STATES MAGISTRATE JUDGE